SCOTTISH UNION, ETC., INS. CO. OF EDINBURGH et al. v. J. H. MOHL-MAN CO.

(Circuit Court, S. D. New York. March 30, 1896.)

EQUITY—JURISDICTION—BILL OF PEACE—MULTIPLICITY OF SUITS.

Several actions commenced or threatened by the same plaintiff against different insurance companies which had issued policies on the plaintiff's property, and refused to pay losses thereunder, do not constitute a multiplicity of suits, within the meaning of the law, authorizing the interference of equity, although the same defense is set up by each of the defendants; and an injunction will not be granted to restrain the prosecution and commencement of such actions, upon a bill in the nature of a bill of peace, filed by all the insurance companies against the plaintiff in such actions.

Michael H. Cardozo and Benj. N. Cardozo, for the motion.
Treadwell Cleveland, opposed.

LACOMBE, Circuit Judge. This is an application for a preliminary injunction to restrain the prosecution of actions at law brought by defendant in this court against two of the complainants, and to restrain defendant from bringing any action at law against any of the other complainants. The bill is in the nature of a bill of peace. Inasmuch as the two actions already pending are at issue, and on the calendar for trial next week, a prompt decision of this motion is necessary. It will not be possible, in the brief time thus allowed, to discuss at length the learned and exhaustive brief presented by counsel for the complainants. It has been carefully examined, however, and due consideration given to all the points presented, with the result that the court is clearly of the opinion that the injunction asked for should be refused.

The Mohlman Company, a New York corporation, was the owner of a stock of groceries and other merchandise contained in the premises No. 339 Greenwich street and Nos. 19 and 21 Jay street, and in the premises No. 156 Franklin street, through to, and being, Nos. 38 and 40 North Moore street, all in the city of New York. It insured its property against loss by fire in several companies, including the complainants. On April 30, 1895, a very large part of the merchandise in the last-mentioned premises was wholly destroyed, and the remainder thereof greatly damaged, by fire. Each of the insurance companies has declined to pay the loss under its policy. The Mohlman Company can therefore recover the amount such company is entitled to receive from each underwriter only by a separate action at law against it. Whatever other defenses these companies, or one or more of them, may have, all insist that they are relieved from the obligations of their respective policies because, as they aver, the building in which the goods were stored fell before the fire began. Every policy contains this clause: "If a building, or any

part thereof, fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease." The assured insists that the building did not fall, except as the result of the fire.    There will be thus presented in the controversy arising upon each policy the issue of fact, which was first, the fall or the fire?    This is a plain and simple issue, easy to be tried in a court of law.    Each policy of insurance is a distinct and separate contract between two parties only,—the assured and the single insurance company which issued it.    By no possibility can there be any multiplicity of suits against any one of the complainants.    A single action at law upon its policy will finally determine all questions in which it is at all concerned.    Nor will the result of an action against one company alter or modify in any way the rights of the parties to another.    If the assured is beaten in his action against Company X., and recovers $10,000 against Company Y., the successful company will be under no obligation to pool the results of both cases with the unsuccessful one.    Surely there is no hardship in the fact that an insurer who has issued a policy, and refuses to pay a loss because it believes the assured is not entitled to recover, may be brought into a court of law by the assured to settle the issue of fact between them.    The complainants nevertheless contend that they are entitled to tie the assured up, possibly for years, by this bill of peace, and meanwhile litigate in a forum of their own selection the single defense above suggested.    Should that point be decided against them, the other defenses to the assured's actions would still remain, and he would still have to prove his case separately against each, unless the insurers graciously decided to put him to no further trouble.

It is contended that the numerous authorities cited in the brief warrant the granting of such relief.    In the opinion of this court, however, none of them go to that length; and, if the drift of some of them be in that direction, it would seem to be a good time to call a halt.    The system of jurisprudence and procedure which is known to courts and lawyers as "equity" is a good thing, but justice and fair dealing are better.    If a court of chancery has the power, it should be slow to exercise its discretion to hale into its own jurisdiction an individual who, having rights under different, independent contracts, is seeking to enforce them against independent defendants in the courts appropriate to pass upon them, simply because these separate defendants may think it more convenient or more expedient to combine forces against him in a single suit.    Each of these insurers, independently of all the others, has entered into a contract with the assured which entitles the latter to come into the federal court in a common-law action, and submit all issues between them to its arbitration, and the constitution of the United States secures to him a trial of those issues by a jury.    It might well be inferred from the present application that there is some aversion to face such a tribunal, and that it is expected the chances of success will be greater if the testimony be taken, according to the invariable practice in equity in this district, by written deposition, when the court never sees the witness, nor has the benefit of observing how his testimony

is given, and noting his demeanor under cross-examination. If the present application were successful, we might, no doubt, expect to see all such insurance litigation promptly transferred to the equity side of the court. Most persons insure against fire in more than one company, and if a dozen companies can, by combining as complainants have, take the assured out of the common-law courts, there is no good reason why a half dozen, or even less, should not go and do likewise.

The fundamental difficulty with complainants' position is that although there may be a multiplicity of actions from the point of view of the assured, who may have to sue each company, there is no multiplicity of actions from the point of view of the insurer, for no insurer is threatened with more than a single action. For this reason, perhaps, much is made in the brief of the difficulties and embarrassments to which the court will be exposed in trying practically the same issue over and over again, "in an interminable series of litigations, while the course of justice is obstructed by repeated and protracted trials, each of which will occupy a period of not less than two weeks." The court does not share counsel's alarm. Other groups of actions, wherein practically the same issue was involved in all the actions of each group, have, within the court's experience, been tried here before. The experience was monotonous, no doubt, to both court and counsel, but did not produce any perceptible inconvenience to other litigants, or embarrassment or obstruction to the course of justice. Moreover, it by no means follows that there will be as many actions tried as the complainants seem to anticipate. It may be that the assured will not be discouraged, should he lose his first action, or even his second, on the defense above suggested; but the idea that he will continue to throw good money after bad, in prosecuting an indefinite number of expensive two-weeks trials, each requiring the presence of able counsel and "forty witnesses," and in which he is uniformly unsuccessful, is a purely gratuitous assumption. And if he succeeds in the first two or three actions, the several defendants therein being unable, even with the assistance of the other insurers, to prove the defense relied on, these complainants will no doubt be able successfully to avoid any further multiplicity of actions without having to invoke the aid of a bill of peace. The motion for a preliminary injunction is denied.

This suit is brought by insurance companies who are either aliens, or citizens of some other state than this. An application to be allowed to intervene is made by several other insurance companies, who are citizens of New York, and who have issued policies on the same property. Since the Mohlman Company is also a citizen of New York, none of these companies could be sued in the federal court. There seems no good reason then why that court should be asked to interfere. There is no risk of interference with its calendars, or with the course of administration of justice in its precincts. The state court can best decide whether the public interests require a stay of actions at law brought or threatened within its jurisdiction, and to it should be made the application of the domestic corporations for a so-called bill of peace. The motion to intervene is also denied.